UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

-----------------------------------------------------------------

THOMAS NGUYEN,

                          Plaintiff,                    **MEMORANDUM & ORDER**
                                                        14-CV-1058 (MKB)

              v.

RIDGEWOOD SAVINGS BANK and PETER
BOGER,

                          Defendants.

-----------------------------------------------------------------

THOMAS NGUYEN,

                          Plaintiff,                    14-CV-3464 (MKB)

              v.

CHASE BANK USA, N.A. and JAMES DIMON,

                          Defendants.

-----------------------------------------------------------------

THOMAS NGUYEN and TIFFANY NGUYEN,

                          Plaintiffs,                   14-CV-3989 (MKB)

              v.

SANTANDER BANK, N.A., ROMAN BLANCO,
CITIBANK, N.A., MICHAEL CORBAT,
EXPERIAN INFORMATION SOLUTIONS, INC.,
DONALD ROBERT, TRANS UNION LLC, and
EQUIFAX, INC.,

                          Defendants.

-----------------------------------------------------------------

MARGO K. BRODIE, United States District Judge:

Plaintiffs Thomas Nguyen ("Mr. Nguyen") and Tiffany Nguyen ("Ms. Nguyen"), proceeding *pro se*, commenced the above-captioned actions against Defendants, alleging violations of the Fair Credit Reporting Act, 15 U.S.C. § 1681 *et seq.* ("FCRA"), Wall Street Reform and Consumer Protection Act, 12 U.S.C. § 5301 *et seq.* ("CFPA"), particularly the section relating to the Bureau of Consumer Financial Protection, §§ 5481–5620, 42 U.S.C. §§ 1983 and 1985, and the New York State Fair Credit Reporting Act. The three Complaints name different Defendants but raise overlapping claims.[1]

Currently before the Court are seven separate motions to dismiss filed by Defendants Ridgewood Savings Bank and Peter Boger, (Ridgewood Mot. to Dismiss, No. 14-CV-1058 Docket Entry ("58DE") No. 37), Chase Bank USA, N.A. and James Dimon, (Chase Mot. to Dismiss, No. 14-CV-3464 Docket Entry ("64DE") No. 19), Santander Bank, N.A. and Roman Blanco, (Santander Mot. to Dismiss, No. 14-CV-3989, Docket Entry ("89DE") No. 46), Citibank, N.A. and Michael Corbat, (Citibank Mot. to Dismiss, 89DE No. 61), Experian

---

[1] These actions are three of seven filed by Mr. Nguyen in the Eastern District of New York in the last fifteen months, many of which have been dismissed. *See Nguyen v. Bush*, No. 15-CV-641 (E.D.N.Y. filed Feb. 6, 2015) (*see* Docket Entry No. 6 (dismissing complaint in full without leave to amend)); *Nguyen v. Milliken*, No. 15-CV-587 (E.D.N.Y. filed Jan. 30, 2015) (*see* Docket Entry No. 5 (dismissing complaint in full with leave to amend)); *Nguyen v. Santander Bank*, No. 14-CV-3989 (E.D.N.Y. filed June 26, 2014) (dismissing complaint at September 17, 2014 status conference, with leave to amend); *Nguyen v. JPM Chase Bank*, No. 14-CV-03464 (E.D.N.Y. filed June 2, 2014) (same); *Nguyen v. China Nat'l Offshore Oil Corp. (CNOOC)*, No. 14-CV-3327 (E.D.N.Y. filed May 29, 2014) (dismissing complaint at September 17, 2014 status conference, in full with prejudice as any amendment would be futile) *appeal dismissed* No. 14-3871 (2d Cir. Mar. 6, 2015); *Nguyen v. Bank of America*, No. 14-CV-1243 (E.D.N.Y. filed Feb. 26, 2014) (*see* Docket Entry No. 22 (dismissing complaint in full with leave to amend)); *Nguyen v. Ridgewood Savings Bank*, No. 14-CV-1058 (E.D.N.Y. filed Feb. 28, 2014) (*see* Docket Entry No. 22 (dismissing complaint in full with leave to amend)).

Information Solutions, Inc. and Donald Robert,[2] (Experian Mot. to Dismiss, 89DE No. 54),

Trans Union LLC, (Trans Union Mot. to Dismiss, 89DE No. 50), and Equifax, Inc., (Equifax

Mot. to Dismiss, 89DE No. 58). Defendants move pursuant to Rules 8, 9, and 12(b)(6) of the

Federal Rules of Civil Procedure. Also before the Court is Mr. Nguyen's requests for default

judgments against Ridgewood and Boger, (58DE Nos. 32–33), and against Experian and Robert.

(*See* Am. Compl. in No. 14-CV-3989 ("3989 Am. Compl.") ¶ 17, 89DE No. 25; *see also* Letter

dated Nov. 18, 2014 from Mr. Nguyen seeking default judgments against Experian and Robert,

89DE No. 32.)

For the reasons discussed below, Defendants' motions to dismiss are granted as to

Plaintiffs' federal claims, and Mr. Nguyen's motions for default judgments are denied. As

Plaintiffs have previously been given the opportunity to amend their complaints in each action,

and have failed to correct the deficiencies identified by the Court, the Amended Complaints are

dismissed with prejudice as to all of Plaintiffs' federal claims.

## I. Background

### a. Procedural background

Plaintiff Mr. Nguyen, proceeding *pro se*, filed the above-captioned actions challenging

various actions of Ridgewood Savings Bank ("Ridgewood"); Peter Boger, Chairman, President

and Chief Executive Officer ("CEO") of Ridgewood; Chase Bank USA, N.A. ("Chase"),

---

[2] Experian Information Solutions, Inc. submitted a single motion to dismiss, noting that it was incorrectly identified in the Complaint as "Experian Inc." and "CEO Don Robert." (Cover Letter dated January 12, 2015 at 1, 89DE No. 53.) Robert did not join Experian's motion to dismiss, (*see generally* Experian Mot. to Dismiss), though Experian's counsel has entered an appearance on Robert's behalf, (89DE No. 69), and the memorandum of law in support of the motion seeks dismissal as to Robert for failure to state a claim, (Experian Mem., 89 DE No. 55 at 4–5, 12).

incorrectly identified as JPMC Chase Bank in the initial Complaint; James Dimon, Chairman and Chief Executive Officer ("CEO") of JPMorgan Chase & Co., incorrectly identified as Jamie Dimon; Santander Bank, N.A. ("Santander"); Roman Blanco, Chairman and CEO of Santander; Citibank, N.A. ("Citibank"), incorrectly identified as Citibank (Citigroup); Michael Corbat, CEO of Citigroup; Experian Information Solutions, Inc. ("Experian"), incorrectly identified as Experian, Inc.; Donald Robert, Chairman of Experian plc;[3] Trans Union LLC ("Trans Union"); and Equifax, Inc. ("Equifax"). Mr. Nguyen's daughter, Tiffany Nguyen, is also a Plaintiff in action 14-CV-3989. The three Complaints name different Defendants but raise overlapping claims and frequently contain overlapping allegations. Mr. Nguyen's submissions often reference all three actions, and the Amended Complaints filed in 14-CV-1058 and 14-CV-3989 include reference to the other actions in the captions. In addition, Mr. Nguyen submitted an identical "addendum" to his Amended Complaints in actions 14-CV-3464 and 14-CV-3989.

On September 17, 2014, the Court dismissed the Complaints in 14-CV-3464 and 14-CV-3989 in their entirety pursuant to Rule 8 of the Federal Rules of Civil Procedure, for failure to plead with specificity the violation Plaintiffs allege, and permitted Plaintiffs to file amended complaints. (See Nos. 14-CV-3464 and 14-CV-3989, Minute Entry dated Sept. 17, 2014.) By Memorandum and Order dated December 17, 2014, the Court dismissed the Complaint in 14-CV-1058 for failure to state a claim pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. Plaintiffs subsequently filed Amended Complaints, and Defendants now move to dismiss the Amended Complaints in all of the above-captioned actions.

---

[3] Experian plc is the parent company of Experian Information Solutions, Inc. (Corporate Disclosure Statement ¶ 1, No. 14-CV-3989, Docket Entry No. 36.)

### b. Factual background

The following facts are taken from Plaintiffs' Amended Complaints, (Am. Compl. in No. 14-CV-1058 ("1058 Am. Compl."), 58DE No. 23; Am. Compl. in No. 14-CV-3464 ("3464 Am. Compl."), 64DE No. 12; 3989 Am. Compl.), an identical Addendum to the Amended Complaint submitted in actions 14-CV-3989 and 14-CV-3464 on October 24, 2014, (Am. Compl. Add., 64DE No. 14 and 89DE No. 27), and a Supplemental Addendum to the Amended Complaint filed in 14-CV-3989 on October 31, 2014, in which Mr. Nguyen "repeats and re-alleges . . . the entire amended complaint in 14-[CV]-3464." (Suppl. Am. Compl. Add. ¶ 22, 89DE No. 28).

In sum, Plaintiffs appear to allege that Santander, Chase, Citibank and Ridgewood provided incorrect or inaccurate information about Mr. Nguyen's accounts to Equifax, Experian and Trans Union, which affected Mr. Nguyen's credit score. Both Plaintiffs also experienced difficulty obtaining credit from Defendant banks at various times.

### i. Allegations against Santander, Blanco, Equifax, Experian and Trans Union

On or about February 19, 2007, Mr. Nguyen was approved for a "GoldOption" credit account with Santander, with a credit line of $15,000, and another "GoldOption" credit account with a credit line of $26,500 held by Bank of America, but serviced by FIA Card Services. (3989 Am. Compl. ¶ 2.) Mr. Nguyen alleges that he attempted to pay down his two credit accounts with his disposable income, but "[D]efendants were using unfair, deceptive, abusive acts or practices . . . to drive [Mr. Nguyen] into destitution." In or about June of 2007, Mr. Nguyen went to a Bank of America branch to attempt to make a payment on his Santander credit

card account, and alleges that Santander never received his $1000 payment.[4] (*Id.* ¶ 3.) Mr. Nguyen contacted a manager at one of the banks, and was eventually informed that "they found the money." (*Id.*) Mr. Nguyen alleges that his "credit-performance" on the Santander account "is considered AAA+++." (*Id.*)

Mr. Nguyen alleges that from November 19, 2008 to the present, Santander, Bank of America, and FIA Card Services, acting in conspiracy with one another, committed unfair, deceptive, abusive acts or practices "against" his accounts, forcing him "eventually and gradually into a life of hell for so many years until" September 1, 2013, when Mr. Nguyen sustained atrial fibrillation and other heart conditions. (*Id.* ¶ 4.) At some point, Mr. Nguyen apparently requested that someone examine the "GoldOption portfolio," and "the office of President and CEO represented by Tom Jordan" contacted Experian. (*Id.* ¶ 5.) Mr. Nguyen was also sent a "suspicious, terrorizing, and threaten [*sic*] letter." (*Id.*) Plaintiffs allege that from October 16, 2013 through the date the present actions were filed, Experian, Bank of America and Santander "conspired in committed [*sic*] a fraudulent act, criminal deception, grossly abusive" practice by "fabricating" the credit utilization ratio reported to Mr. Nguyen. (*Id.*) Mr. Nguyen recalculated his own credit utilization ratio, based on a total credit limit of $71,000[5] and reached a different conclusion, placing him in the "top of .01% tail [*sic*] on normal distribution curve of favorable credit rating and credit score." (*Id.*)

In March or April of 2013, Mr. Nguyen alerted Janet Sanders, "Brooklyn Tech's payroll

---

[4] It is unclear from the allegations in the Amended Complaint what connection Mr. Nguyen believes that Santander and Bank of America have beyond offering credit accounts with the name "GoldOption."

[5] Plaintiffs allege that this reflects Mr. Nguyen's total credit limit on all of his revolving accounts.

secretary,"[6] "Beth Johnson's UFT chapter leader" and Teresa Samuels, "UFT Brooklyn Rep." that something was wrong "inside." (*Id.* ¶ 10.) In September of 2013, Mr. Nguyen spent one week in Maimonides hospital in Brooklyn. (*Id.* ¶ 9.) Plaintiffs allege that Santander and Bank of America's actions with respect to Mr. Nguyen's credit accounts caused financial and psychological damage, and slowed Mr. Nguyen's recovery time. (*Id.*)

In or about January 2014 through October 2014, Plaintiffs allege that Santander committed a series of deceptive, unfair, and abusive acts or practices including various forms of fraud against Mr. Nguyen's checking account and a separate line of credit. (*Id.* ¶ 6.) Mr. Nguyen alerted the Consumer Financial Protection Bureau ("CFPB") and sent a letter to Blanco regarding the issue, and received a letter in reply from a bank representative on February 24, 2014.[7] (*Id.*) On March 29, 2014, Mr. Nguyen attempted to withdraw $20 from his account ending in -1223 at Santander, and received a receipt regarding a different account, ending in -3496, indicating that there was a larger balance in the account than he knew was in his -1223 account.[8] (*Id.* ¶ 6c; Ex. S_F 5.) Plaintiffs allege that this was a "set-up" and a scam. (3989 Am. Compl. ¶ 6c.) Plaintiffs allege that Santander, acting in concert with Bank of America and FIA

---

[6] Exhibits annexed to the Supplemental Addendum to the Amended Complaints in 14-CV-3989 and 14-CV-3464 indicate that in 2012, and perhaps later, Mr. Nguyen was a math teacher at Brooklyn Technical High School. (Letter dated March 1, 2012 from Randy J. Asher, Principal of Brooklyn Technical High School to Mr. Nguyen, annexed to Supp. Am. Compl. Add. at Ex. 2.)

[7] Plaintiffs state that they have attached the letter to the Complaint, but the copy filed is illegible. (*See* Ex. S_F, annexed to 3989 Am. Compl.) Plaintiffs appear to object to computation of balances on Mr. Nguyen's account statements, alleging that the accounting is fraudulent. (3989 Am. Compl. ¶ 6; Ex. S_F 3–4.)

[8] It is not clear from the Complaint what relationship there is between the two accounts, and why Mr. Nguyen would receive a receipt for the account ending in -3496 when he attempted to withdraw $20 from the account ending in -1223.

Card Services, deceptively and fraudulently violated the FCRA and engaged in unfair and deceptive practices in relation to Mr. Nguyen's credit accounts. (*Id.* ¶ 9.) Mr. Nguyen further states that he "has suffered loss and damages including, but not limited to, financial loss, financial injuries, expenditure of time and resources, emotional distress, A-Fib, mental anguish, humiliation, and embarrassment, entitling him to actual immediate relief." (*Id.*)

In January 2014 "and thereafter," Mr. Nguyen contacted Experian, Trans Union and Equifax to "personally address[] the issue and offer[] [an] amicable solution." (*Id.* ¶ 16.) On March 1, 2014, Plaintiffs allege that Experian committed unspecified fraud. (*Id.* ¶ 17.) Mr. Nguyen "gave the evidence to expose Experian [*sic*] crime to the [Federal Trade Commission ("FTC")] and CFPB." (*Id.*) Also in March 2014, Trans Union answered Mr. Nguyen's letter with an inaccurate credit report, in which Trans Union "deceptively sandbag[ged]" Mr. Nguyen's credit score by "suppress[ing] my payment's info[rmation] and data with JPM Chase [and] Ridgewood . . . ." (*Id.* ¶ 18.) Plaintiffs also allege that Equifax used unfair practices against Mr. Nguyen for many years, apparently related to reporting a low credit utilization ratio and otherwise using or misusing Mr. Nguyen's FICO credit score. (*Id.*) Mr. Nguyen also apparently received two calls from Equifax's counsel in August, although he does not specify the year. (*Id.*) Plaintiffs complain that one of the calls was unprofessional because it was received at 9:26 PM on a Sunday evening, while Mr. Nguyen was serving food to his brother in a nursing home. (*Id.*)

On April 28, 2014, Santander "and/or" Experian "fraudulently" collected $16.30 "instead of the usual one week prior to the 28th . . . ." (*Id.* ¶ 6d.) Plaintiffs allege that Mr. Nguyen suffered "fears, financial and physical injuries, etc." (*Id.*) Since September 17, 2014, Mr. Nguyen has received more than one hundred "harass[ing] phone call[s]" from Santander. (*Id.* ¶ 6e.) On October 20, 2014, Mr. Nguyen received a telephone call asking him to verify his

social security number, and spoke with two different individuals.  (*Id.* ¶ 6e.)  Mr. Nguyen

"politely advised them to ask those [*sic*] Blanco and [Vice President, Manager of Customer

Relations JoAnn] Gruber and then hung up[.]"  (*Id.* ¶ 6e.)  On another occasion, Mr. Nguyen

received a call from "Jeff," on behalf of Santander, at 8:00 AM on a Saturday.  (*Id.*)

### ii. Allegations against Citibank and Michael Corbat

At the end of the 3989 Amended Complaint, Plaintiffs allege that Citibank and Corbat

"were contacted" and discussed the Plaintiffs' allegations against them including conspiracy to

commit murder.  (*Id.* ¶ 20.)  Plaintiffs refer to the Addendum to the Amended Complaint.  (*Id.*)

Therein, Plaintiffs allege that Citibank acted with non-party Expedia "et al" in a conspiracy with

"several 'State Actors' to committing [*sic*] murder or committing [*sic*] to terrorize us in the post

9/11 era, etc. in pursuant to FCRA" and several sections of the United States Code.  (Am.

Compl. Add. 1.)

At or about the time Mr. Nguyen's father passed away in January of 2014, Mr. Nguyen

called Citibank "at about 2~3 am" requesting an increase in his credit line, which was refused.

(Supp. Am. Compl. Add. ¶ 15.)  Mr. Nguyen allegedly purchased flights from Expedia to

Vietnam to attend his father's funeral.  Mr. Nguyen alleges that Citibank acted in conjunction

with Expedia to commit unfair and deceptive acts against him, forcing him to extend his credit

account over the credit limit.  (*Id.*)

At some unspecified time, Mr. Nguyen brought to Citibank's attention an unauthorized

charge on his account.  (*Id.*)  Citibank removed the charge from his account initially, but later re-

charged the credit account.  (*Id.*)

On April 23, 2014, Citibank refused Ms. Nguyen a credit card account "because of

terrorist activity," but still sent her a credit card in the mail.  (*Id.* ¶ 19.)  Plaintiffs allege this

constitutes "discrimination, character defamation, abuse of power" and is "criminally fraud [*sic*]."  (*Id.*)

### iii.    Allegations against Chase Bank and Dimon

Mr. Nguyen brought a separate action, not joined by Ms. Nguyen, against Chase Bank and Dimon, in which he alleges similar claims for fraud, unfair and deceptive business practices, violations of the FCPA and CFPA, and conspiracy pursuant to 42 U.S.C.§ 1985.  (3464 Am. Compl. ¶ III.)  Mr. Nguyen alleges that Chase bank engaged in "illegal and deceptive practices" between October 2005 and June 2012, and that on September 13, 2013, the CFPB ordered Chase to pay more than $309 million in damages to credit card customers.  (3464 Am. Compl. ¶¶ 1, 8.) On September 13, 2013, Mr. Nguyen filed a claim in Small Claims Court, Kings County, for "Chase's violation" relating to Mr. Nguyen's credit card account, seeking damages of $5000 ("Small Claims action").  (*Id.* ¶ 2.)  In December 2013, Mr. Nguyen sent Dimon a letter regarding his credit card account, because it "was illegally charged and billed with illegal and deceptive practice products."  (*Id.* ¶ 3.)

Shortly after filing his Small Claims action, Mr. Nguyen received a telephone call requesting his appearance on "People's Court" with Dimon "or his representative."  (*Id.* ¶ 4.) Mr. Nguyen alleges that he "smelled something fishy" and determined that the offer was related to fraud and collusion, though he does not allege who colluded and for what end the collusion occurred.  (*Id.* ¶ 4.)  On January 27, 2014, Mr. Nguyen received a letter from a lawyer stating, *inter alia*, "please contact me to discuss the litigation and whether we can reach an amicable resolution."  (*Id.* ¶ 5.)  On March 3, 2014, Mr. Nguyen received another telephone call from the "Judge Judy Show," asking if he would appear on the show regarding the small claims case.  (*Id.* ¶ 6.)  Mr. Nguyen apparently did not appear on either television show, instead appearing before

Judge Harriet Thompson in April of 2014, where Mr. Nguyen indicated that he would bring the action in the United States District Court after discontinuing his Small Claims action. (*Id.* ¶ 7.)

Mr. Nguyen alleges that he had a "good if not perfect record with Chase until" July of 2014. (*Id.* ¶ 8.) He states that "Chase broke the law and had been ordered to pay [P]laintiff, one of the victims." (*Id.*) He also refers to a "fabricated charge-off" and indicates that this was a "false pretense" for Chase to conspire with Credit Reporting Agencies via "fraud-ridden report(s)." (*Id.*) According to Mr. Nguyen, Chase "knowingly and willingly used false and inaccurate credit information" to cut his credit line — on a different account — from $14,000 to $6700, and to raise the interest rate on his account. (*Id.* ¶ 9.) Mr. Nguyen then stopped "dealing with" Chase. (*Id.* ¶ 8.) He states that the conduct, including cutting his credit line, "changing Court TV shows," and "conspiring" with different lawyers and attorneys, were "unfair and abusive practice[s]" and "pervert[ed] the course justice [*sic*]." (*Id.* ¶ 10.)

Mr. Nguyen spent a week at Maimonides Hospital in Brooklyn as a result of Defendants' conduct. (*Id.* ¶¶ 10, 15.) He suffered from "financial loss, financial injuries, expenditure of time and resources, emotional distress, A-Fib, mental anguish, humiliation, and embarrassment," which he argues entitles him to relief. (*Id.* ¶ 14.) At the end of his Complaint, Mr. Nguyen repeats his allegations regarding his March or April 2013 contact with Janet Sanders, Beth Johnson's "UFT chapter leader" and Teresa Samuels. (*Id.* ¶ 15.)

### iv. Allegations against Ridgewood and Boger

Mr. Nguyen brought a third action, not joined by Ms. Nguyen, against Ridgewood and Boger, in which he alleges similar claims for fraud, unfair and deceptive business practices, violations of the FCRA and CFPA, and conspiracy pursuant to 42 U.S.C. § 1985. (1058 Am. Compl. ¶ III.) The facts alleged in Mr. Nguyen's Complaint are set forth in *Nguyen v.*

*Ridgewood Savings Bank (Nguyen I)*, --- F. Supp. 3d ---, 2014 WL 7182812 (E.D.N.Y. Dec. 17, 2014), which decision dismissed Mr. Nguyen's initial Complaint, but permitted him to file the instant Amended Complaint.

In or about November of 2005, Mr. Nguyen opened a Certificate of Deposit ("CD") account of $8000 with Ridgewood. (1058 Am. Compl. ¶ 1.) In connection with the account, Mr. Nguyen received a television and a camcorder. (*Id.*) On or about October 2007, Mr. Nguyen obtained a secured loan of about 90% of the CD value. (*Id.* ¶ 2.) Sometime between 2005 and 2010, Mr. Nguyen began making monthly payments on his loan at the Ridgewood branch in Brooklyn, NY. (*Id.* ¶ 3.) In 2013, Mr. Nguyen contacted the Federal Deposit Insurance Corporation's ("FDIC") Consumer Response Center disputing the accuracy of Ridgewood's records as to the timeliness of twenty two of Mr. Nguyen's payments on his loan. (*Id.* ¶¶ 4–5, 18.) A short time "before or after" December 16, 2013, Mr. Nguyen contacted Ridgewood seeking an additional loan, and appears to allege that he was denied the loan in connection with the gifts he received in 2005. (*Id.* ¶ 7a.) Mr. Nguyen attempted to resolve these issues in person at the branch, but the persons with whom he had direct contact were no longer available. (*Id.* ¶ 7b.) Ridgewood then reported to Trans Union or Experian that Mr. Nguyen had missed payments on his loan. (*Id.*)

Mr. Nguyen alleges that Equifax, Trans Union, Experian, Ridgewood, "and all [D]efendants in all cases" were motivated by a discriminatory animus against him in a conspiracy against him. (*Id.* ¶ 19.)

### v. Additional allegations

In the Supplemental Addendum to his Amended Complaint on October 31, 2014, Mr. Nguyen includes a number of facts not related to any of the Defendants in the above-captioned

actions. He refers to actions surrounding the September 11, 2001 terrorist attacks in New York

City, Mr. Nguyen's former employment at Brooklyn Technical High School, Mr. Nguyen's

contact with the United States Embassy in the Republic of Singapore, alleged discrimination

perpetrated by Randy Asher,[9] and the death of Mr. Nguyen's father in January of 2014. (Supp.

Am. Compl. Add. ¶¶ 1–14, 20, 30–31.) Mr. Nguyen also alleges that he "saw the perpetrator

attempting or/ and conspiring to kill or/ and to terrorize" him on three separate airline flights,

though he does not indicate who "the perpetrator" is or include any other details about what

happened. (*Id.* ¶¶ 16–18.) Mr. Nguyen also attached documents relating to teaching evaluations

at Brooklyn Technical High School, (*id.* at 12–18), and airline itineraries, (*id.* at 19–21). He did

not indicate how any of these additional documents were relevant to the above-captioned cases.

## II. Discussion

### a. Standard of review

In reviewing a motion to dismiss under Rule 12(b)(6) of the Federal Rules of Civil

Procedure, a court "must take all of the factual allegations in the complaint as true." *Pension*

*Ben. Guar. Corp. ex rel. St. Vincent Catholic Med. Centers Ret. Plan v. Morgan Stanley Inv.*

*Mgmt. Inc.*, 712 F.3d 705, 717 (2d Cir. 2013) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678

(2009)); *see also Lundy v. Catholic Health Sys. of Long Island Inc.*, 711 F.3d 106, 113 (2d Cir.

2013) (quoting *Holmes v. Grubman*, 568 F.3d 329, 335 (2d Cir. 2009)); *Matson v. Bd. of Educ.*,

631 F.3d 57, 63 (2d Cir. 2011) (quoting *Connecticut v. Am. Elec. Power Co.*, 582 F.3d 309, 320

(2d Cir. 2009)). A complaint must plead "enough facts to state a claim to relief that is plausible

on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A claim is plausible "when

---

[9] Randy J. Asher appears to have been the principal at Brooklyn Technical High School in 2012. (*See* Supp. Am. Compl. Add. 12.)

the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Matson*, 631 F.3d at 63 (quoting *Iqbal*, 556 U.S. at 678); *see also Pension Ben. Guar. Corp.*, 712 F.3d at 717–18. A complaint need not contain "detailed factual allegations," but a plaintiff must do more than present "an unadorned, the defendant-unlawfully-harmed-me accusation." *Matson*, 631 F.3d at 63 (internal quotation marks omitted) (quoting *Iqbal*, 556 U.S. at 678). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged — but it has not 'show[n]' — 'that the pleader is entitled to relief.'" *Pension Ben. Guar. Corp.*, 712 F.3d at 718 (alteration in original) (quoting *Iqbal*, 556 U.S. at 679). Although all allegations contained in the complaint are assumed true, this principle is "inapplicable to legal conclusions" or "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements."[10] *Iqbal*, 556 U.S. at 678. In reviewing a *pro se* complaint, the court must be mindful that the plaintiff's pleadings should be held "to less stringent standards than formal pleadings drafted by lawyers." *Hughes v. Rowe*, 449 U.S. 5, 9 (1980) (internal quotation marks omitted); *Harris v. Mills*, 572 F.3d 66, 72 (2d Cir. 2009) (noting that even after *Twombly*, the court "remain[s] obligated to construe a *pro se* complaint liberally"). If a liberal reading of the complaint "gives any indication that a valid claim might be stated," the court must grant leave to

---

[10] When deciding a motion to dismiss, a court's review is limited to the four corners of the complaint, as well as (1) documents attached to the complaint, (2) any documents incorporated in the complaint by reference, (3) any documents deemed integral to the complaint, and (4) public records. *See Nielsen v. Rabin*, 746 F.3d 58, 65 (2d Cir. 2014) (Jacobs, J. dissenting) (documents attached to the complaint and those incorporated by reference); *Global Network Commc'ns, Inc. v. City of New York*, 458 F.3d 150, 156 (2d Cir. 2006) (documents integral to the complaint); *Blue Tree Hotels Inv. (Canada), Ltd. v. Starwood Hotels & Resorts Worldwide, Inc.*, 369 F.3d 212, 217 (2d Cir. 2004) (public records). For the purposes of this Memorandum and Order, the Court deems Plaintiffs' supplemental submissions in support of the Amended Complaints as part of the Amended Complaints.

amend the complaint.  *Shabazz v. Bezio*, 511 F. App'x 28, 31 (2d Cir. 2013) (quoting *Branum v. Clark*, 927 F.2d 698, 705 (2d Cir. 1991)).

### b.  Fair Credit Reporting Act claims

As observed in *Nguyen I*, the FCRA regulates consumer credit reporting agencies to ensure the confidentiality, accuracy, relevancy, and proper utilization of consumer credit information.  15 U.S.C. § 1681(b); *Nguyen I*, --- F. Supp. 3d at ---, 2014 WL 7192812, at *2. Under the statute, "consumer reporting agencies," sometimes referred to as "credit reporting agencies," are defined as entities which, for a monetary fee, "regularly engage[] in whole or in part in the practice of assembling or evaluating consumer credit information or other information on consumers for the purpose of furnishing consumer reports to third parties."  15 U.S.C. § 1681a(f).  "The FCRA places distinct obligations on three types of entities: consumer reporting agencies, users of consumer reports, and furnishers of information to consumer reporting agencies."  *Redhead v. Winston & Winston, P.C.*, No. 01-CV-11475, 2002 WL 31106934, at *3–5 (S.D.N.Y. Sept. 20, 2002) (citing 15 U.S.C. § 1681, *et seq.*; *Aklagi v. Nationscredit Fin. Servs. Corp.*, 196 F. Supp. 2d 1186, 1192 (D. Kan. 2002); *Thomasson v. Bank One, La., N.A.*, 137 F. Supp. 2d 721, 722 (E.D. La. 2001))).[11]

### i.  Individual Defendants

Plaintiffs have set forth no allegations as to Blanco, Dimon, Corbat, Robert or Boger ("Individual Defendants") that establish the FCRA applies to them.  Plaintiffs' FCRA claims are therefore dismissed as to the Individual Defendants.

---

[11] A "furnisher" is "an entity that furnishes information relating to consumers to one or more consumer reporting agencies for inclusion in a consumer report."  16 C.F.R. § 660.2. Plaintiffs do not specifically allege which Defendants they consider to be furnishers, and which they consider to be consumer reporting agencies.

### ii.    Furnishers of information

Plaintiffs appear to bring claims against all Defendant banks as furnishers of information, similar to those claims Mr. Nguyen brought against Ridgewood in *Nguyen I*, that is, that Defendant banks improperly provided inaccurate information to consumer reporting agencies, or failed to correct inaccurate information that was provided to the consumer reporting agencies. "As part of [its] regulatory scheme, the [FCRA] imposes several duties on those who furnish information to consumer reporting agencies." *Longman v. Wachovia Bank, N.A.*, 702 F.3d 148, 150–51 (2d Cir. 2012) (citing 15 U.S.C. § 1681s–2). Among those obligations are the duties to provide accurate information to consumer reporting agencies, to correct inaccurate information, and to correct inaccurate information after receiving notice of a credit dispute directly from a consumer. 15 U.S.C. § 1681s-2(a); *see Longman*, 702 F.3d at 150 ("Among these are duties to refrain from knowingly reporting inaccurate information, *see* § 1681s-2(a)(1), and to correct any information they later discover to be inaccurate, *see* § 1681s-2(a)(2)."). Furthermore, furnishers of information have a responsibility to conduct an investigation after receiving notice of a credit dispute from a consumer reporting agency. § 1681s-2(b); *see also Redhead*, 2002 WL 31106934, at *4 ("The FCRA imposes two [general] duties on furnishers of information, codified at 15 U.S.C. §§ 1681s–2(a) and (b).").

### 1.    Section 1681s-2(a)

"[T]here is no private cause of action for violations of [Section] 1681s-2(a)." *Longman*, 702 F.3d at 151 (collecting cases); *Barberan v. Nationpoint*, 706 F. Supp. 2d 408, 427 (S.D.N.Y. 2010); *Trikas v. Universal Card Servs. Corp.*, 351 F. Supp. 2d 37, 44 (E.D.N.Y. 2005). Therefore, any claims Plaintiffs attempt to bring under Section 1681s-2(a) of the FCRA, including those claims relating to Plaintiff's complaints directly to Defendant banks, are

dismissed.

## 2.    Section 1681s-2(b)

To state a claim under Section 1681s-2(b) of the statute, Plaintiffs must allege that a furnisher of information received notice from a consumer reporting agency of Mr. Nguyen's credit dispute.  *See Markovskaya v. Am. Home Mortg. Servicing, Inc.*, 867 F. Supp. 2d 340, 344 (E.D.N.Y. 2012) ("Plaintiff's only claim can be pursuant to Section 1681s-2(b).  As noted, such a claim is stated only when [p]laintiff can show that the furnisher received information regarding a consumer's credit directly from a credit reporting agency, and not only from the consumer."); *Dickman v. Verizon Commc'ns, Inc.*, 876 F. Supp. 2d 166, 172–74 (E.D.N.Y. 2012) ("[U]nder § 1681s-2(b), [a] defendant ha[s] no duty to investigate [a] credit dispute unless defendant received notice of the dispute from a consumer reporting agency." (alterations in original) (internal quotation marks omitted) (quoting *Prakash v. Homecomings Fin.*, No. 05-CV-2895, 2006 WL 2570900, at *3 (E.D.N.Y. Sept. 5, 2006))); *Kane v. Guar. Residential Lending, Inc.*, No. 04-CV-4847, 2005 WL 1153623, at *4 (E.D.N.Y. May 16, 2005) ("[T]he duty to investigate in Subsection (b) is triggered only after a furnisher of information receives notice *from a credit reporting agency* of a consumer's dispute.").  "A plaintiff proceeding under [Section] 1681s-2(b) is required to show that the furnisher was told by a credit reporting agency that the consumer's information was disputed, as opposed to being told by the consumer directly." *Mendy v. JP Morgan Chase & Co.*, No. 12-CV-8252, 2014 WL 1224549, at *5 (S.D.N.Y. Mar. 24, 2014) (internal quotation marks and citations omitted).

The majority of Plaintiffs' allegations are conclusory statements that Defendants Santander, Chase, Citibank and Ridgewood engaged in unfair and abusive practices, providing no indication of whether the alleged practice involved information reported to a consumer

reporting agency. Plaintiffs appear to allege that Defendant banks forced Mr. Nguyen into destitution by refusing to extend him further credit or reducing his credit limits, which affected his credit utilization ratio and credit score, making it difficult for him to obtain further credit and leading to increased interest rates on his accounts. Plaintiffs also specifically allege certain practices on the part of each Defendant bank: that Santander charged Mr. Nguyen approximately sixteen dollars on the wrong date, and at an unspecified time; Citibank inappropriately dealt with a charge which Mr. Nguyen reported was unauthorized; Citibank "refused" Ms. Nguyen a credit card, though it eventually sent one to her in the mail; Chase billed Mr. Nguyen inappropriately; and Ridgewood improperly reported to Trans Union that Mr. Nguyen had made late payments on his account.

Plaintiffs allege that Mr. Nguyen notified the FTC, the CFPB and the FDIC Consumer Response Center regarding his issues with the Defendant banks, and the Amended Complaints allege that Experian, Trans Union and Equifax were involved in "conspiracy" with the Defendant banks. Plaintiffs also allege that Experian may have acted in conjunction with Santander to collect the sixteen dollars, although they are unclear and indeterminate on Experian's involvement, and allege that Mr. Nguyen contacted Experian, Trans Union and Equifax in January 2014, although there is no indication in any of Complaints of what Mr. Nguyen reported to them other than "address[ing] the issue[12] and offer[ing an] amicable solution in the interest of law and in the interest of our mother, America." (3989 Am. Compl. ¶ 16.) Even affording the Complaint a liberal reading, it is difficult to conclude from the allegations that Ridgewood,

---

[12] Though it is not clear from the Complaints, Plaintiffs vaguely tie "the issue" to their allegations that the consumer reporting agencies were engaged in fraud of some kind. (*See* 3989 Am. Compl. ¶ 16.)

Chase,[13] Citibank or Santander received or ignored any notice of a dispute regarding the completeness or accuracy of any information provided to a consumer reporting agency. *See Dickman*, 876 F. Supp. 2d at 172 ("[U]nder § 1681s–2(b), [a] defendant ha[s] no duty to investigate [a] credit dispute unless defendant received notice of the dispute from a consumer reporting agency." (alterations in original) (quoting *Prakash*, 2006 WL 2570900, at *3)). Absent any allegation that (a) Plaintiffs notified a consumer reporting agency of a credit dispute or (b) any of the Defendant banks, Ridgewood, Chase, Citibank or Santander, was notified by a consumer reporting agency of a dispute as to the accuracy of the information furnished to a consumer reporting agency, Plaintiffs fail to state a claim under the FCRA. Plaintiffs' claims are therefore dismissed with prejudice.

### iii. Consumer reporting agencies

Plaintiffs allege generally that Equifax, Trans Union and Experian violated the FCRA. "The FCRA creates a private right of action against credit reporting agencies for the negligent or willful violation of any duty imposed under the statute." *Casella v. Equifax Credit Info. Servs.*, 56 F.3d 469, 473 (2d Cir. 1995) (internal citations omitted).[14] Based on their allegations, Plaintiffs appear to invoke Sections 1681e and 1681i of the FCRA against the Defendant consumer reporting agencies, which require consumer reporting agencies to insure that the

---

[13] Chase also moves for dismissal of Mr. Nguyen's FCRA claim on the ground that claims more than two years old are barred by the statute of limitations. The Court declines to address the statute of limitations, given that Mr. Nguyen has not plausibly identified a factual basis for his claim, including failing to identify when the claim arose.

[14] Equifax argues that Equifax, Inc., the named Defendant in this action, is a holding company for Equifax Information Services LLC and is not a credit reporting agency subject to the FCRA. (Equifax Mot. to Dismiss 4 n.1.) Because the Court has determined that Plaintiffs have failed to allege any facts that would support a claim against Equifax, the Court declines to address this argument.

reported information is accurate, and to investigate disputes as to the accuracy of reported information.[15]

### 1. Section 1681e(b)

Section 1681e(b) imposes a duty on consumer reporting agencies "to assure maximum possible accuracy of the information concerning the individual about whom the report relates." 15 U.S.C. § 1681e(b); *Podell v. Citicorp Diners Club, Inc.*, 112 F.3d 98, 104 (2d Cir. 1997) (same); *Gorman v. Experian Info. Solutions, Inc.*, No. 07-CV-1846, 2008 WL 4934047, at *4 (S.D.N.Y. Nov. 19, 2008) ("[T]he FCRA requires that consumer reporting agencies, such as Experian, 'follow reasonable procedures to assure maximum possible accuracy of the information' contained in the consumer report." (quoting 15 U.S.C. § 1681e(b))). In order to succeed on a claim under Section 1681e(b), a plaintiff must show that:

> (1) the consumer reporting agency was negligent [or willful] in that it failed to follow reasonable procedures to assure the accuracy of its credit report; (2) the consumer reporting agency reported inaccurate information about the plaintiff; (3) the plaintiff was injured; and (4) the consumer reporting agency's negligence proximately caused the plaintiff's injury.

*Gorman*, WL 4934047, at *4 (quoting *Whelan v. Trans Union Credit Reporting Agency*, 862 F. Supp. 824, 829 (E.D.N.Y. 1994)) (internal quotation marks omitted) (alteration in original); *Selvam v. Experian Info. Solutions, Inc.*, No. 13-CV-6078, 2015 WL 1034891, at *3 (E.D.N.Y.

---

[15] Plaintiffs also reference 15 U.S.C. §§ 1681o and 1681n, which permit civil liability for consumer reporting agencies' negligent or willful noncompliance with the statute. Under Sections 1681o and 1681n, a plaintiff is entitled to actual damages as a result of defendants' noncompliance with the statute. "To maintain a claim under the FCRA, Plaintiff bears the burden of demonstrating 'actual damages sustained' as a result of the Defendants' activities." *Caltabiano v. BSB Bank & Trust Co.*, 387 F. Supp. 2d 135, 141 (E.D.N.Y. 2005) (citing *Casella v. Equifax Credit Info. Servs.*, 56 F.3d 469, 473 (2d. Cir. 1995)). Defendants argue that Plaintiffs fail to adequately allege actual damages to support their claims under the statute. The Court declines to address Defendants' argument as to damages, as Plaintiff has failed to state a claim for liability under the statute.

Mar. 10, 2015) (same); *Agu v. Rhea*, No. 09-CV-4732, 2010 WL 5186839, at *5 (E.D.N.Y. Dec. 15, 2010) (same) (quoting *Gaft v. Mitsubishi Motor Credit of Am.*, No. 07-CV-527, 2009 WL 3148764, at *9 (E.D.N.Y. Sept. 29, 2009)). Merely reporting inaccurate information is insufficient to give rise to liability under the FCRA, as the Act is not a strict liability statute. *See* 15 U.S.C. §§ 1681o, 1681n; *Ogbon v. Beneficial Credit Servs., Inc.*, No. 10-CV-3760, 2013 WL 1430467, at *6–7 (S.D.N.Y. Apr. 8, 2013) ("[A] credit reporting agency is not held strictly liable under the FCRA merely for reporting [inaccurate information]; rather, the consumer must show that the agency failed to follow reasonable procedures in generating the inaccurate report." (internal quotation marks and citations omitted)), *appeal dismissed* (Sept. 23, 2013); *Gaft*, 2009 WL 3148764, at *9 ("However, an inaccurate entry of credit information, in and of itself, is not a violation of the FCRA; rather . . . plaintiff must allege that the consumer reporting agencies failed, through negligence or intention, to follow reasonable procedures to ensure the accuracy of the information.")

## 2. Section 1681i

Section 1681i sets out procedures consumer reporting agencies must follow to investigate disputes as to the accuracy of reported information. 15 U.S.C. § 1681i. These procedures include reinvestigating a consumer's record within a reasonable period of time after a consumer "directly conveys" a dispute as to the "completeness or accuracy of an item on his credit report" to the consumer reporting agency. *Podell*, 112 F.3d at 101 (citing *id.* § 1681i(a)); *see also Longman*, 702 F.3d at 151 ("If a dispute is filed with the agency, both the agency and the furnisher of that information have a duty to reasonably investigate and verify that the information is accurate." (citing §§ 1681i(a)(1)(A), 1681s–2(b))). Section 1681i states, in relevant part, that if a consumer notifies a consumer reporting agency — either directly or indirectly — of a dispute

as to the accuracy of any item of information contained in his file, within thirty days of notification the consumer reporting agency "shall, free of charge, conduct a reasonable reinvestigation to determine whether the disputed information is inaccurate."[16] 15 U.S.C. § 1681i(a)(1)(A); *see Jones v. Experian Info. Solutions, Inc.*, 982 F. Supp. 2d 268, 272 (S.D.N.Y. 2013) (quoting same). What constitutes a "reasonable" reinvestigation depends on the circumstances of the allegations. *Id.* (citing *Cortez v. Trans Union, LLC*, 617 F.3d 688, 713 (3d Cir. 2010)). "Prior to being notified by a consumer, a credit reporting agency generally has no duty to reinvestigate credit information." *Casella*, 56 F.3d at 474.

### 3. Plaintiffs fail to state a claim

Plaintiffs allege that Trans Union, Equifax and Experian have issued credit reports regarding Mr. Nguyen that contained fraudulent, inaccurate or "deceptive" information, particularly as it relates to Mr. Nguyen's credit utilization ratio and his "FICO" credit score. (*See* 3989 Am. Compl. ¶¶ 5, 18.) Plaintiffs also allege that Mr. Nguyen complained to these agencies about "the issue." (*Id.* ¶ 16.) Plaintiffs fail, however, to make any allegations relating to the procedures Trans Union, Equifax or Experian instituted to ensure the accuracy of the information in Mr. Nguyen's credit reports, to support a Section 1681e(b) claim. *See Ogbon*,

---

[16] In full, the relevant section states:

> [I]f the completeness or accuracy of any item of information contained in a consumer's file at a consumer reporting agency is disputed by the consumer and the consumer notifies the agency directly, or indirectly through a reseller, of such dispute, the agency shall, free of charge, conduct a reasonable reinvestigation to determine whether the disputed information is inaccurate and record the current status of the disputed information, or delete the item from the file in accordance with paragraph (5), before the end of the 30-day period beginning on the date on which the agency receives the notice of the dispute from the consumer . . . .

15 U.S.C. § 1681i(a)(1)(A).

2013 WL 1430467, at *7 (granting summary judgment on Section 1681e claim in favor of Trans

Union and Experian because the plaintiff "ha[d] adduced no evidence to suggest that either

defendant failed to follow reasonable procedures in preparing her credit report"); *Gaft*, 2009 WL

3148764 (dismissing FCRA claim, noting that the plaintiff's amended complaint was "devoid of

any allegations concerning the reasonableness of the procedures used by the defendant consumer

reporting agencies").

Plaintiffs also fail to make any allegations regarding either the procedures followed or

investigations by Trans Union, Equifax or Experian in response to Mr. Nguyen's complaints, in

order to support a Section 1681i claim. Plaintiffs' conclusory and broad allegations of fraud and

deceptive practices, without explanation of how Defendants willfully or negligently violated the

FCRA, do not suffice to state a claim under the statute. *See Selvam*, 2015 WL 1034891, at *3–4

(dismissing FCRA claims against consumer reporting agency when plaintiff failed to explain

how defendant willfully or negligently violated the statute, and did not set forth how consumer

reporting agency acted unreasonably with respect to disputed information); *Agu*, 2010 WL

5186839, at *6 (dismissing FCRA claim against consumer reporting agencies because plaintiff

"rests his Section 1681e claim on a combination of nonspecific, conclusory allegations about

'false' or 'derogatory' statements, and repetition of his argument that Bank of America

incorrectly reported that he 'owe[d] more than once'"). Plaintiff's FCRA claims against Trans

Union, Equifax and Experian are dismissed, with prejudice.

   c.   **Consumer Financial Protection Act claims**

Plaintiffs bring claims pursuant to the CFPA, specifically enumerating Sections 5531,

5536(a), 5563 and 5565. As an initial matter, Plaintiffs provide no facts beyond conclusory

statements that Defendants engaged in unfair and abusive practices to support a finding that

Defendants may be in violation of the CFPA.  Furthermore, Plaintiffs provide no statutory basis, and the Court can find none, for finding a private right of action under these provisions of the statute, which outline duties, authorities and enforcement powers of the CFPB.  *See Johnson v. J.P. Morgan Chase Nat'l Corporate Servs., Inc.*, No. 13-CV-678, 2014 WL 4384023, at *5 (W.D.N.C. Aug. 5, 2014) ("[T]here is no private right of action under the CFPA.") *report and recommendation adopted*, 2014 WL 4384024 (W.D.N.C. Sept. 3, 2014); *In re Capital One Derivative S'holder Litig.*, No. 12-CV-1100, 2012 WL 6725613, at *7 (E.D. Va. Dec. 21, 2012) ("[I]t is true that there are no private causes of action available under . . . the Consumer Financial Protection Act."); *see also Bellikoff v. Eaton Vance Corp.*, 481 F.3d 110, 116 (2d Cir. 2007) (A Court "cannot ordinarily conclude that Congress intended to create a right of action when none was explicitly provided." (citing *Touche Ross & Co. v. Redington*, 442 U.S. 560, 571 (1979))).  A related provision of the statute specifically provides that, "[i]f any person violates a Federal consumer financial law, the *Bureau* may . . . commence a civil action against such person to impose a civil penalty or to seek all appropriate legal and equitable relief including a permanent or temporary injunction as permitted by law."  15 U.S.C. § 5564(a) (emphasis added).  Therefore, Plaintiffs' claims under the CFPA are dismissed, with prejudice, as to all Defendants.

### d. Sections 1983 and 1985

Plaintiffs invoke 42 U.S.C. §§ 1983 and 1985 in relation to vague allegations of conspiracy.  Plaintiffs' claims are not cognizable under Section 1983 or 1985.  In order to sustain a claim for relief under Section 1983, a plaintiff must allege (1) that the challenged conduct was "committed by a person acting under color of state law," and (2) that such conduct "deprived [the plaintiff] of rights, privileges, or immunities secured by the Constitution or laws of the United States."  *Cornejo v. Bell*, 592 F.3d 121, 127 (2d Cir. 2010) (quoting *Pitchell v. Callan*, 13

F.3d 545, 547 (2d Cir. 1994)); *see Pangburn v. Culbertson*, 200 F.3d 65, 72 (2d Cir. 1999) ("To

prove a § 1983 conspiracy, a plaintiff must show:  (1) an agreement between two or more state

actors or between a state actor and a private entity; (2) to act in concert to inflict an

unconstitutional injury; and (3) an overt act done in furtherance of that goal causing damages.");

*Bartels v. Inc. Vill. of Lloyd*, 751 F. Supp. 2d 387, 402 (E.D.N.Y. 2010).  "[T]he under-color-of-

state-law element of § 1983 excludes from its reach merely private conduct, no matter how

discriminatory or wrongful."  *American Mfrs. Mut. Ins. Co. v. Sullivan*, 526 U.S. 40, 50 (1999)

(citation and internal quotation marks omitted).  Similarly, to bring a claim for conspiracy under

Section 1985(3), a plaintiff must allege:

> (1) a conspiracy (2) for the purpose of depriving a person or class
> of persons of the equal protection of the laws, or the equal
> privileges and immunities under the laws; (3) an overt act in
> furtherance of the conspiracy; and (4) an injury to the plaintiff's
> person or property, or a deprivation of a right or privilege of a
> citizen of the United States.

*Finn v. Anderson*, 592 F. App'x 16, 20 (2d Cir. 2014) (quoting *Thomas v. Roach*, 165 F.3d 137,

146 (2d Cir. 1999)) (internal quotation marks omitted).

Plaintiffs have not stated a claim under Section 1983 or 1985 against any Defendant.

Plaintiffs have acknowledged that the Defendants are either private corporations or private

individuals acting as corporate officers of the Defendant corporations.  (1058 Am. Compl. ¶ II;

3464 Am. Compl. ¶ II; 3989 Am. Compl. ¶ II.)  However, Plaintiffs have not alleged that any of

the Defendants were acting under color of state law, nor have they provided any facts which

would support such an allegation beyond the vague and conclusory statement that Defendants

conspired with "State Actors."  Furthermore, Plaintiffs allege no specific violation of

constitutional or federal rights, other than presenting vague and repeated references to

conspiracy.  These general allegations are insufficient to state a claim under Section 1983 or

1985(3).  *See White v. Monarch Pharm., Inc.*, 346 F. App'x 739, 741 (2d Cir. 2009) (noting that

conclusory, vague, or general allegations are insufficient to state a claim for conspiracy pursuant

to Section 1985 (citing *Sommer v. Dixon*, 709 F.2d 173, 175 (2d Cir. 1983))); *Tekiner v. Dep't of

Corr.*, No. 14-CV-1293, 2014 WL 2440671, at *3 (E.D.N.Y. May 30, 2014) ("To state a civil

rights claim under § 1983, a complaint must contain 'specific allegations of fact which indicate a

deprivation of constitutional rights; allegations which are nothing more than broad, simple, and

conclusory statements are insufficient to state a claim under [§] 1983.'" (alteration in original)

(quoting *Alfaro Motors, Inc. v. Ward*, 814 F.2d 883, 887 (2d Cir. 1987))); *Houghton v. Cardone*,

295 F. Supp. 2d 268, 273 (W.D.N.Y. 2003) (same); *see also TADCO Const. Corp. v. Dormitory

Auth. of State of N.Y.*, 700 F. Supp. 2d 253, 262 (E.D.N.Y. 2010) (noting that § 1983 "does not,

however, itself create substantive rights, but 'merely provides a method for vindicating federal

rights elsewhere conferred'" (quoting *Rateau v. City of New York*, No. 06-CV-4751, 2009 WL

3148765, at *4 (E.D.N.Y. Sept. 29, 2009))).  Plaintiffs' claims pursuant to Sections 1983 and

1985 are dismissed, with prejudice, as to all Defendants.

     **e.**    **Federal criminal statutes**

     Plaintiffs appear to assert that certain Defendants are in violation of 18 U.S.C. §§ 1111,

1113, 1117 and 1119, and have "possibl[y]" violated 18 U.S.C. §§ 2381 and 2382.  These

statutes, prohibiting murder, attempt to commit murder or manslaughter, conspiracy to commit

murder, and foreign murder of United States nationals, and treason and misprision of treason,

respectively, do not provide a private right of action.  *See Shaughnessy v. New York*, No. 13-CV-

271, 2014 WL 457947, at *7 (N.D.N.Y. Feb. 4, 2014) (adopting report and recommendation

which concluded "even if the claim were not completely conclusory, plaintiff may not sue any of

the defendants for treason because there is no private right of action for the crime" (citations

omitted)), *appeal dismissed* (May 28, 2014); *Patrick v. Butzbaugh*, No. 08-CV-1075, 2009 WL 311073, at *2 (W.D. Mich. Feb. 6, 2009) (dismissing a claim brought pursuant to section 2381); *Estate of Musayelova v. Kataja*, No.06-CV-881, 2006 WL 3246779, at *2 (D. Conn. Nov. 7, 2006) (denying reconsideration of dismissal of action including claims brought pursuant to 18 U.S.C. §§ 1111 and 1117, noting that there was no private cause of action); *see also Delarosa v. Serita*, No. 14-CV-737, 2014 WL 1672557, at *2 (E.D.N.Y. Apr. 28, 2014) ("Violations of the Criminal Code do not provide a basis for a civil cause of action, unless the particular provision in question includes an express or implied private right of action." (quoting *Weinstein v. City of New York*, No. 13-CV-06301, 2014 WL 1378129, at *4 (S.D.N.Y. Apr. 8, 2014))). Accordingly, Plaintiffs' claims pursuant to these federal criminal statutes are dismissed with prejudice.

Because Plaintiffs have failed to state a claim under the FCRA, CFPA, 42 U.S.C. §§ 1983 and 1985, or the referenced federal criminal statutes, all of Plaintiffs' federal claims are dismissed for failure to state a claim, pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure.[17]

### f. New York State Fair Credit Reporting Act claims

Plaintiffs also bring claims pursuant to the New York State Fair Credit Reporting Act, specifically referring to N.Y. Gen. Bus. Law §§ 380-o, 380-*l*, 380-m.[18] The Court declines to

---

[17] Defendants also moved for dismissal pursuant to Rules 8 and 9(b) of the Federal Rules of Civil Procedure, arguing that Plaintiffs failed to sufficiently plead their claims, and Rule 12(b)(5) of the Federal Rules of Civil Procedure, arguing that Plaintiffs failed to properly serve certain Defendants, including Corbat, (*see* Citibank Mot. to Dismiss 1 n.1). Because the Court finds that Plaintiffs have failed to state a claim against any of the Defendants, the Court will not address the alternative grounds for dismissing the Complaints.

[18] Defendants argue that Plaintiffs' claims brought pursuant to the New York State Fair Credit Reporting Act are preempted, as outlined in 15 U.S.C. § 1681t(b). While this may be the case in some instances, *see Galper v. JPMorgan Chase, N.A.*, No. 13-CV- 3449, 2014 WL

exercise supplemental jurisdiction over Plaintiffs' state law claims.  *See* 28 U.S.C. § 1367(c)(3) ("District courts may decline to exercise supplemental jurisdiction over a claim if the district court has dismissed all claims over which it has original jurisdiction.").  Because Plaintiffs' Complaints do not contain sufficient facts that may fairly be read to state a claim for any violation of Plaintiffs' federal rights, the Court declines to exercise supplemental jurisdiction over Plaintiffs' state law claims.  Plaintiffs' state law claims are dismissed without prejudice.

### g. Mr. Nguyen's request for default judgments

By letter dated November 18, 2014, Mr. Nguyen moved for default judgments against Experian and Robert, alleging that Plaintiffs had not received Experian's motion to dismiss or an answer to his Complaint, and arguing that "Experian is the biggest criminal ever in the history of [Mr. Nguyen's] life."  (Letter dated Nov. 18, 2014 from Mr. Nguyen seeking default judgment against Experian and Robert 1, 89DE No. 32.)  On March 27, 2015, Mr. Nguyen filed a letter renewing his request for default judgments on the grounds that Experian and Robert have failed to defend the action.[19]  (Letter dated Mar. 24, 2015, 89DE No. 65.)

Mr. Nguyen has failed to show a basis for his motion.  As an initial matter, it is not clear that Experian and Robert have failed to defend this action.  By Order of the Court dated November 6, 2014, Defendants were granted until December 5, 2014 to serve their motions to dismiss.  On December 5, 2014, counsel for Experian electronically filed a letter indicating that Experian had served its motion to dismiss on Plaintiffs.  (89DE No. 37.)  Experian's counsel

---

1089061, at *3–6 (S.D.N.Y. Mar. 17, 2014) (discussing scope of preemptive effect of Section 1681t(b)(1)(F)), the Court declines to address the issue of federal preemption.

[19]  By letters dated March 6, 2015 and March 11, 2015, Mr. Nguyen requested default judgments against Ridgewood and Boger, which the Court denied.  (*See* No. 14-CV-1058, Order dated Mar. 10, 2015 and Order dated Mar. 17, 2015.)

entered her appearance on the same day. (89DE No. 35.) Experian timely filed a motion to dismiss.[20] (*See* 89DE No. 54.) Second, because Plaintiffs have failed to state a claim against Experian and Robert, Mr. Nguyen cannot show that Experian and Robert are liable to him on the grounds alleged, even if they had defaulted. *See Lopez v. Yossi's Heimishe Bakery Inc.*, No. 13-CV-5050, 2015 WL 1469619, at *3 (E.D.N.Y. Mar. 30, 2015) (adopting report and recommendation, which noted that "[w]ith respect to liability, a defendant's default does no more than concede the complaint's factual allegations; it remains the plaintiffs' burden to demonstrate that those uncontroverted allegations, without more, establish the defendant's liability on each asserted cause of action" (citing *Finkel v. Romanowicz*, 577 F.3d 79, 84 (2d Cir. 2009) and *Greyhound Exhibitgroup, Inc. v. E.L.U.L. Realty Corp.*, 973 F.2d 155, 159 (2d Cir. 1992))).

### h. Plaintiffs will not be granted leave to amend

"Generally, '[a] *pro se* complaint should not be dismissed without the Court granting leave to amend at least once when a liberal reading of the complaint gives any indication that a valid claim might be stated.'" *Obot v. Sallie Mae*, --- F. App'x ---, 2015 WL 548202, at *2 (2d Cir. Feb. 11, 2015) (alteration in original) (quoting *Nielsen v. Rabin*, 746 F.3d 58, 62 (2d Cir. 2014)). Plaintiffs have been granted leave to amend in all three of their actions, and Mr. Nguyen has been granted leave to file supplemental addenda to the Amended Complaints in 14-CV-3464 and 14-CV-3989. Plaintiffs have failed to address the deficiencies in their Complaints in accordance with the Court's prior orders, and the Court therefore dismisses all of Plaintiffs' federal claims with prejudice. *See Shabtai v. Levande*, 38 F. App'x 684, 686–87 (2d Cir. 2002)

---

[20] As discussed *infra* n.2, Robert did not explicitly join Experian's motion to dismiss, but Experian and Robert are represented by counsel at the same law firm and Experian's memorandum of law in support of the motion to dismiss contains argument as to Robert.

(affirming dismissal of *pro se* complaint after failure to file amended complaint that complied with Rule 8 of the Federal Rules of Civil Procedure, in accordance with district court's order). Plaintiffs will not be granted leave to further amend the Complaints.

## III. Conclusion

For the foregoing reasons, the Court grants Defendants' motions to dismiss, with prejudice, all of Plaintiffs' federal claims and dismisses, without prejudice, Plaintiffs' state law claim. The Court denies Plaintiff's request for default judgments. The Clerk of the Court is directed to close these cases.

SO ORDERED:

_____
      s/ MKB
MARGO K. BRODIE
United States District Judge

Dated: May 15, 2015
      Brooklyn, New York